IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ANGELA MOORE                                                                                          PLAINTIFF

V.                                                                       CIVIL ACTION NO. 1:10CV170-B-S

SHEARER-RICHARDSON MEMORIAL
NURSING HOME AND DAVID KENNEDY                                              DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court on the plaintiff's motion for partial summary judgment, the defendants' motion for partial summary judgment, the defendants' motion and renewed motion to stay, and the defendants' motion to strike. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Angela Moore, brings this action pursuant to 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., against her former employer, defendant Shearer-Richardson Memorial Nursing Home ("Shearer-Richardson"), and her immediate supervisor, defendant David Kennedy, alleging claims of race discrimination and First Amendment retaliation as well as state law tort claims of discharge in violation of public policy, assault and battery, and malicious interference with employment, pursuant to the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1, et seq. In addition to compensatory damages and reinstatement, Moore sues for punitive damages against Kennedy.

Moore, an African-American female, was employed as a housekeeper at Shearer-Richardson's facility located in and owned by Chickasaw County, Mississippi, for

approximately fifteen years. Defendant David Kennedy, a white male, was Moore's immediate supervisor during all times relevant to this lawsuit.

The plaintiff alleges that on February 5, 2010, she approached Kennedy regarding a scheduling issue. She had been scheduled to work for seven straight days and asked permission for a personal day off. Kennedy denied the request, and the plaintiff resumed her duties. Shortly thereafter, the plaintiff was in the process of taking out the trash near Kennedy's office when Kennedy called to her. Kennedy put his arm around the plaintiff's shoulder and said, "You know I love you." He then balled his fist around her blouse and attempted to pull her into the office. The plaintiff asserts Kennedy told her he was tired of "you all" employees telling him what they were or were not going to do. After struggling against Kennedy, the plaintiff freed herself. Kennedy then asked, "Are you quitting?" The plaintiff responded that she was leaving to file assault charges. Kennedy told her to leave. The plaintiff traveled to the Okolona Police Department and reported the assault. She returned to work on her next scheduled work day, February 7, 2010, but was sent home and told to report again on Monday, February 8, 2010. She did so, and her employment was terminated on that date. Her employer advised her that she was discharged for leaving work without permission.

Kennedy was subsequently tried and convicted of simple assault in the Municipal Court of Okolona, Mississippi. He has appealed his conviction to the Circuit Court of Chickasaw County, Mississippi, and the appeal remains pending.

The Mississippi Department of Employment Security ("MDES") denied the plaintiff's claim for unemployment benefits, concluding that the plaintiff voluntarily left her employment without good cause. The plaintiff appealed the MDES decision, and a telephonic hearing was

held before an administrative law judge ("ALJ") on May 26, 2010. The plaintiff, her legal counsel, Shearer-Richardson, its advocate, and two witnesses on behalf of Shearer-Richardson, including Kennedy, participated in the hearing. The ALJ subsequently issued a detailed opinion finding, inter alia, that the plaintiff was assaulted by Kennedy, that she was given permission to leave to report the assault, and that she was later discharged for doing so. The judge reversed the MDES decision and found in favor of the plaintiff on her claim for unemployment benefits. Shearer-Richardson appealed the judge's decision to the MDES Board of Review, which affirmed the decision. Shearer-Richardson did not exercise its right to appeal the Board's decision to circuit court.

The plaintiff filed a charge with the Equal Employment Opportunity Commission on her Title VII claim and, after receiving a notice of right to sue, filed the present action against Shearer-Richardson and Kennedy on July 9, 2010. Kennedy subsequently moved to dismiss the individual claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6), and the court denied the motion. The plaintiff now moves for partial summary judgment as to liability for her claims of retaliation in violation of the First Amendment and discharge in violation of Mississippi public policy, arguing that the factual findings made by the MDES have preclusive effect in the present action. The defendants have likewise moved for partial summary judgment as to the plaintiff's race discrimination claim, her First Amendment claim, her claim of discharge in violation of Mississippi public policy, her claim of malicious interference with employment, and her request for reinstatement. The defendants have also moved to stay this case pending the outcome of Kennedy's criminal appeal and have moved to strike the audio transcript of the MDES hearing because it was submitted after the close of discovery.

<u>Standard of Review</u>

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). Further, self-serving "affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

The court must render summary judgment in favor of the moving party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). The Supreme Court has cautioned, however, that the ruling court must not encroach upon the functions of the jury. The Court stated in *Reeves* as follows:

> [T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Id.* (citations omitted). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

*Plaintiff's Motion for Partial Summary Judgment*

The plaintiff asserts that she is entitled to summary judgment as to liability for two of her claims in this case based on the doctrine of collateral estoppel as set forth in the Fifth Circuit's decision in *Cox v. DeSoto County, Miss.*, 564 F.3d 745 (5th Cir. 2009). According to the plaintiff, the MDES factual findings have preclusive effect as to her claims for retaliation in violation of the First Amendment and for discharge in violation of Mississippi public policy. The plaintiff acknowledges that state administrative decisions are not given preclusive effect for claims for which Congress has provided a detailed administrative remedy such as Title VII. *Id.* at 748-49. The MDES findings therefore have no preclusive effect on the plaintiff's race discrimination claim.

The Fifth Circuit specifically held in *Cox* that factual findings of the Mississippi Employment Security Commission[1] have a preclusive effect on later claims for wrongful termination. The court stated:

> The law is clear that "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." In Mississippi, administrative decisions are given preclusive effect. Specifically, the decisions of the MESC are given preclusive weight in Mississippi courts, if supported by the evidence and in the absence of fraud.

*Id.* at 748 (quoting *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)) (citations omitted).

The defendants assert that the MDES findings are not controlling on this court. Quoting the Mississippi Supreme Court in *Garraway v. Retail Credit Co.*, 141 So. 2d 727, 730 (Miss. 1962), the defendants argue that collateral estoppel should not be applied in this case because "there is room for suspicion regarding the reliability" of the MDES factual findings. The defendants assert that room for suspicion is present because the hearing before the ALJ was telephonic and the judge could not, therefore, view the demeanor of the various witnesses or adequately assess their credibility.

The court is unpersuaded by the defendants' argument and finds no reason to question the soundness of the ALJ's ruling. The plaintiff and Shearer-Richardson were represented at the hearing. The parties were allowed to call and cross-examine witnesses and to introduce evidence regarding the plaintiff's termination, and there is no indication that the judge had any difficulty discerning and weighing credibility.

---

[1] The Mississippi Employment Security Commission and the Mississippi Department of Employment Security are the same entity. Miss. Code Ann. § 71-5-101.

The defendants also argue that it is "patently unfair to allow Plaintiff to use the MDES finding yet disregard the potential finding of the Chickasaw County Circuit Court on the very same issue in a proceeding she instigated." The court is likewise unpersuaded by this argument. The defendants have failed to show how the MDES findings against Shearer-Richardson relate to the criminal adjudication against Kennedy. If Kennedy's conviction stands in circuit court, it merely establishes beyond a reasonable doubt that Kennedy assaulted the plaintiff. On the other hand, Kennedy's acquittal would not mean that the assault did not occur but only that it was not proven beyond a reasonable doubt. The question of fact as to the assault would simply remain to be resolved in the present case, and, of course, it would not have to be resolved beyond a reasonable doubt. Kennedy's criminal appeal ultimately has no substantive bearing on this case.

The court notes that the plaintiff impliedly concedes that the MDES findings do not have preclusive effect on her individual claims against Kennedy. She states, "It is sharply disputed whether Kennedy committed these torts [of assault and battery] or not . . . . There is a quintessential fact issue for the jury . . . . These claims should . . . proceed to trial." As addressed above, the plaintiff has acknowledged that only the claims of First Amendment retaliation and discharge in violation of Mississippi public policy – claims against Shearer-Richardson as the plaintiff's employer – are affected by the preclusive weight of the MDES findings.

In order to prevail on her First Amendment retaliation claim, the plaintiff "must prove that (1) she suffered an adverse employment decision; (2) she was engaged in protected activity; and (3) the requisite causal relationship between the two exists." *Jordan v. Ector County*, 516

F.3d 290, 294-95 (5th Cir. 2008). Whether the activity at issue is constitutionally protected turns on three questions:

> First, it must be determined whether the employee's speech is pursuant to his or her official duties. If it is, then the speech is not protected by the First Amendment. Second, if the speech is not pursuant to official duties, then it must be determined whether the speech is on a matter of public concern. Third, if the speech is on a matter of public concern, the *Pickering*[2] test must be applied to balance the employee's interest in expressing such a concern with the employer's interest in promoting the efficiency of the public services it performs through its employees.

*Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008) (quoting Ronna Greff Schneider, 1 *Education Law: First Amendment, Due Process and Discrimination Litigation* § 2:20 (West 2007)).

Notwithstanding the preclusive effect of the MDES findings in this case, the court is unconvinced that the plaintiff is entitled to summary judgment on her First Amendment retaliation claim. The MDES findings are preclusive as to the fact that the plaintiff suffered an adverse employment decision and that there is a causal relationship between the plaintiff's leaving to file charges and her discharge. The ALJ expressly found that "[t]he employer . . . discharged the claimant for leaving work to file these charges." The question remains, however, whether the plaintiff was engaged in protected activity. The plaintiff's speech was clearly not pursuant to her official duties. Now it must be determined whether the speech was a matter of public concern.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."

---

[2]*Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)

*Connick v. Myers*, 461 U.S. 138, 147-48 (1983). In *Thompson v. City of Starkville, Miss.*, 901 F.2d 456 (5th Cir. 1990), the Fifth Circuit's review of the record revealed "that the form, content, and context of Thompson's alleged speech all create genuine issues of material fact as to whether his expression addressed matters of public concern." *Id.* at 467. This court likewise finds genuine issues of material fact on the issue of public concern in this case, noting, however, that just because the speech is of a personal nature does not negate the possibility that it may be of public concern. In a case of mixed speech or motives, "the speaker must have spoken *predominantly* 'as a citizen' to trigger First Amendment protection." *Dodds v. Childers*, 933 F.2d 271, 274 (5th Cir. 1991) (quoting *Thompson*, 901 F.2d at 465-66) (emphasis in original). The court finds that this matter has yet to be determined, as it was not resolved by the MDES adjudication. Further, while "[s]peech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import,"[3] the record is not entirely clear that Kennedy is even a "public official" or that the plaintiff is a "public employee" within the meaning of those terms as contemplated by the *Connick* and *Thompson* courts. The court acknowledges that "[w]hether the speech at issue is on a matter of public concern is a question of law that must be determined by the court." *Modica v. Taylor*, 465 F.3d 174, 180 (5th Cir. 2006). The court, however, finds that unresolved questions of fact must be answered before it can determine this question of law. *See Thompson*, 901 F.2d at 467.

The defendants argue that the plaintiff's retaliation claim is barred because it was not included in her EEOC charge. "In general, timely filing of EEOC charges is a prerequisite to a

---

[3]*Thompson*, 901 F.2d at 463 (quoting *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988)).

9

Title VII suit." *Bunch v. Bullard*, 795 F.2d 384, 388-89 (5th Cir. 1986). The plaintiff, however, does not assert a Title VII retaliation claim. She asserts a First Amendment retaliation claim. The EEOC prerequisite, therefore, does not apply.

The court, despite giving preclusive effect to the MDES adjudication, finds that genuine issues of material fact remain on the plaintiff's First Amendment retaliation claim, and it should proceed to trial. Both the plaintiff's and defendants' motions for summary judgment as to this claim shall be denied.

The court reaches a different result as to the plaintiff's claim for discharge in violation of Mississippi public policy. The Mississippi Supreme Court carved out an exception to the Mississippi "at-will employment" doctrine in *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993), and a claim based on the exception is often referred to as a "*McArn* claim." "To invoke the *McArn* exception, [the plaintiff] must demonstrate that the activities that he complained of constituted either criminal activity or a directive that he engage in criminal activity." *Kyle v. Circus Circus Miss., Inc.*, 2011 U.S. App. LEXIS 8834, at *13-14 (5th Cir. Apr. 28, 2011). "[T]he *McArn* exception 'requires that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties.'" *Id.* at *11 (quoting *Hammons v. Fleetwood Homes of Miss., Inc.*, 907 So. 2d 357, 360 (Miss. Ct. App. 2004)).

The MDES adjudication has established that the plaintiff was assaulted by Kennedy, that she reported the assault, which is a criminal offense carrying criminal penalties,[4] and that she was discharged because she did so. The elements of the claim have been met, and the court finds

---

[4]Miss. Code Ann. § 97-3-7(1).

that the plaintiff is entitled to summary judgment as to liability on her claim for discharge in violation of Mississippi public policy.

*Defendants' Motion for Partial Summary Judgment*

The defendants move for summary judgment on the claims addressed above as well as the plaintiff's claims of Title VII and Section 1981[5] race discrimination and her claim of malicious interference with employment. The court has found unresolved questions of fact precluding summary judgment on the plaintiff's First Amendment retaliation claim and is persuaded that liability as to the plaintiff's *McArn* claim has been sufficiently established. The court now turns to the plaintiff's race discrimination claim.

In the absence of direct evidence of discrimination,[6] a plaintiff's Title VII claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Under the framework, the plaintiff must first establish a prima facie case of discrimination by demonstrating the following:

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

---

[5] Title VII and Section 1981 race discrimination claims are parallel causes of action "and require the same proof to show liability." *Bunch v. Bullard*, 795 F.2d 384, 387 n.1 (5th Cir. 1986). The court will therefore address the claims as one.

[6] The plaintiff asserts that Kennedy's reference to "you all" refers to his black employees, and she implies that the term was racially charged. It is unclear whether the plaintiff means to submit this statement as direct evidence of discrimination, but regardless, the court does not deem it as such.

11

*Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Once the plaintiff has established a prima facie case, "an inference of intentional discrimination is raised, and the burden of production shifts to the employer, who must offer an alternative nondiscriminatory explanation for the adverse employment action." *Id.* If the defendant can set forth a legitimate nondiscriminatory reason for its action, the burden then shifts back to the plaintiff who must show at "a new level of specificity" that the explanation is merely a pretext for discrimination. *Thornbrough v. Columbus and Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513 (1993). In the alternative, the plaintiff may show "that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado*, 492 F.3d at 611 (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). *See also* 42 U.S.C. § 2000e-2(m). If the plaintiff proceeds under the second option and successfully proves that her race played a motivating part in the employment action, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's [race] into account." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003) (applying Title VII "mixed-motive" analysis in a gender discrimination case).

      Notwithstanding the shifting of "intermediate evidentiary burdens" under *McDonnell Douglas*, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "The *McDonnell Douglas* division of intermediate

12

evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question." *Id.*

In the case sub judice, it is undisputed that the plaintiff is a member of a protected class and was qualified for her position. Whether she was subjected to an adverse employment action is disputed and, though resolved by the MDES findings on two of the plaintiff's claims, technically remains in question on her race discrimination claim.[7] This question is of no consequence, however, as the plaintiff's inability to satisfy the fourth prong of the prima facie case is ultimately dispositive of this claim.

The Fifth Circuit requires that "to establish disparate treatment, a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001). The plaintiff asserts that the disparate treatment alleged in this case did not arise from just "nearly identical" circumstances but from the same circumstances – that is, the altercation between Kennedy and the plaintiff. The plaintiff asserts that she was terminated as a result of this incident and that Kennedy was not; nor was he disciplined in any manner. The plaintiff's argument misses the mark, however.

Under Fifth Circuit jurisprudence, Kennedy is not a proper comparator, and the plaintiff and Kennedy are not similarly situated under nearly identical circumstances. The Fifth Circuit has stated:

---

[7]As addressed hereinabove, state administrative decisions are not given preclusive effect for claims for which Congress has provided a detailed administrative remedy such as Title VII. *Cox*, 564 F.3d at 748-49.

> [W]e require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Lee*, 574 F.3d at 259-60 (5th Cir. 2009) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)) (citations omitted).

The plaintiff asserts – and not unreasonably – that Kennedy should have been disciplined for his involvement in the altercation with the plaintiff; yet he was not. It is this disparate treatment upon which the plaintiff bases her race discrimination claim. The plaintiff, however, does not allege that she was terminated for being involved in an altercation. While it can be said that her termination arose from the same set of facts in which she asserts Kennedy was treated more favorably, the conduct at issue is not properly comparable to support a disparate treatment claim. Leaving to file assault charges and committing an assault are two entirely different actions. The conduct which drew the plaintiff's adverse employment decision is, therefore, not "nearly identical" to the conduct for which the plaintiff asserts Kennedy was treated more favorably. Further, the plaintiff and Kennedy did not hold the same job or responsibilities, did not have the same supervisor, and did not have comparable violation histories. Thus neither the conduct nor the individuals themselves are "nearly identical" within the meaning attributed to

that term by the Fifth Circuit. For these reasons, the defendants are entitled to summary judgment on the plaintiff's race discrimination claim.

The defendants also move for summary judgment on the plaintiff's claim against Kennedy for malicious interference with an employment contract. The elements of such a claim are as follows:

> 1) the acts were intentional and willful; 2) that they were calculated to cause damages to the plaintiffs in their lawful business; 3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred.

*Levens v. Campbell*, 733 So. 2d 753, 760-61 (Miss. 1999). The plaintiff acknowledges that "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985). The plaintiff asserts, however, that defendant Kennedy did act in bad faith and has directed the court to sufficient evidence showing that a genuine issue of material fact remains on this claim. The court therefore finds that summary judgment is inappropriate, and the claim shall proceed to trial.

Finally, the defendants move for summary judgment on the plaintiff's reinstatement claim. As the plaintiff correctly notes, however, reinstatement is not a claim but an equitable remedy. Whether reinstatement is warranted and feasible is a question to be determined by the court after the trial of this case.

*Defendants' Motion to Stay and Renewed Motion to Stay*

The defendants move the court to stay this action pending defendant Kennedy's appeal of his assault conviction to circuit court. As set forth hereinbove, the court finds no relevant connection between this case and Kennedy's appeal. The burden of proof is different in the two

cases, and whether Kennedy's conviction stands or is reversed has no genuine bearing on the case sub judice. The motion and renewed motion to stay shall therefore be denied.

*Defendants' Motion to Strike*

The defendants move to exclude an audio recording of a hearing held before the MDES because the recording was produced eighteen days after the close of the discovery period in this case. The MDES hearing itself, however, as well as the decisions resulting therefrom were appropriately disclosed during discovery. All the parties in this action not only knew of the MDES hearing, they participated in it. The court finds that the audio recording was sufficiently "made known" to the defendants during the discovery period. *See* Fed. R. Civ. P. 26(e)(1)(A). The court further finds that the failure to disclose the audio recording was "substantially justified" and "is harmless" under Federal Rule of Civil Procedure 37(c)(1). The failure is substantially justified because plaintiff's counsel did not receive the audio recording until after the close of discovery and promptly forwarded a copy to defendants' counsel. The failure is harmless because the defendants were aware of the MDES hearing and in fact participated in it and cannot legitimately argue that they were surprised by this evidence. The defendants' motion to strike is not well taken and shall be denied.

Conclusion

For the foregoing reasons, the court finds that the plaintiff's motion for partial summary judgment should be granted in part and denied in part, that the defendants' motion for partial summary judgment should be granted in part and denied in part, that the defendants' motion and renewed motion to stay should be denied, and that the defendants' motion to strike should be denied.

A separate order in accord with this opinion shall issue this day.

    This, the 28th day of March, 2012.

                                     /s/ Neal Biggers
                                   **NEAL B. BIGGERS, JR.**
                                   **UNITED STATES DISTRICT JUDGE**